# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00116-SCT

*D. W. CALDWELL, INC.*

*v.*

*W.G. YATES & SONS CONSTRUCTION COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/10/2017 |
| TRIAL JUDGE: | HON. CHRISTOPHER A. COLLINS |
| TRIAL COURT ATTORNEYS: | DORSEY R. CARSON, JR. |
| | TERRY L. JORDAN |
| | CHRISTOPHER SOLOP |
| | TRAVIS JONATHAN CONNER |
| | JERALD R. HANKS |
| | DAVID SANDERS HUMPHREYS |
| | JULIE CHRISTINE SKIPPER |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHRISTOPHER SOLOP |
| | TRAVIS JONATHAN CONNER |
| | JERALD R. HANKS |
| ATTORNEYS FOR APPELLEE: | DORSEY R. CARSON, JR. |
| | DAVID SANDERS HUMPHREYS |
| | TERRY L. JORDAN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 05/10/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KING AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     This Court adheres to the widely recognized standards providing for a trial court's amendment of an arbitration award under limited conditions.  Importantly, those standards provide that a court may modify an arbitrator's award to correct an evident miscalculation

of figures before entering its judgment. *See* Miss. Code Ann. § 11-15-135 (Rev. 2004). However, this Court has yet to determine what qualifies as an *evident miscalculation* and to what extent a judge may inquire to determine whether such a miscalculation exists.

¶2. Through the analysis below, we find first that the miscalculations alleged in this matter are not evident from the award itself, nor are they apparent from the agreed-upon record. Additionally, we find that the judge erred when he allowed the parties to present witness testimony regarding the extent of any alleged miscalculations, rather than relying on the award and the arbitration record as the relevant law suggests. Finding error, we reverse the circuit court's decision and remand this case to the circuit court with directions to confirm the December 8, 2015, arbitration award. Furthermore, because the subcontract between the parties provides that each contractor will be responsible for his own fees and costs, the Court declines to assess costs to one party over the other, and instead, enforces their bargained-for agreement.

**FACTS AND PROCEDURAL HISTORY**

¶3. Yates Construction, LLC, and D.W. Caldwell, Inc., entered into a construction sub-contract for the roof installation on a residential dormitory at Auburn University in Auburn, Alabama. Caldwell–the roofing subcontractor–began work on the roof in October 2012. Early on, Caldwell employees identified structural issues with the building, preventing the company from moving forward with the roof installation. Caldwell notified Yates of the issues, and after some discussion about the repairs needed, Caldwell agreed to repair the building prior to installing the roof. Rather than amending the existing subcontract or

2

creating a new contract for the repair expenses, Yates urged Caldwell to bill against "unperformed work" for those costs related to the extra work completed. Although the arrangement was unconventional, Caldwell orally agreed to the billing scheme, requiring that it be paid weekly, on a "cost plus overhead and profit basis."

¶4. When Caldwell completed both the repairs and the roof installation, it had yet to receive total payment for the structural repairs. The companies disputed the scope and expense of these repairs and quickly negotiated their way to an impasse. Thereafter, Caldwell filed a claim against Yates for causing delay and increased costs by failing to pay for work performed, which was in breach of the agreements between the parties.

¶5. The parties proceeded to arbitration. Although the arbitration record was neither recorded nor transcribed, the parties concede that the arbitrator considered arguments, reviewed evidence, and heard witness testimony over the course of three days. He then reopened the proceedings for additional documentation, before issuing his thirteen-page award on December 8, 2015. Shortly thereafter, Yates timely filed its motion for clarification and/or correction of the arbitration award, which was summarily dismissed by the arbitrator. Noting that the award included no clerical, typographical, technical, or computational errors, the arbitrator determined he lacked the authority to re-evaluate the merits of any claim already decided, under the circumstances.

¶6. Within two weeks of the arbitrator's decision to deny Yates's motion, Caldwell requested that the circuit court confirm the award under Mississippi Code Section 11-15-125. One month later, Yates moved the trial court to alter, amend, or vacate the award under

3

Mississippi Code Section 11-15-25.[1] With the understanding that Yates would provide oral argument on its motion at the award confirmation hearing, Caldwell filed a request to limit the presentation of proof before the circuit court.

¶7. The hearing on all three motions was held on December 1, 2016. The circuit court judge began by requesting arguments on Caldwell's motion to limit proof. Throughout the presentations, the court asked questions of the parties' representatives and heard arguments on several issues under discussion. Believing that an evident miscalculation was present as it related to the retainage amounts[2] included in both the subcontract and the final award, the court overruled Caldwell's request to limit proof and permitted the parties to proceed on Yates's motion to alter, amend, or vacate the arbitration award. During this second phase of the hearing, the trial court allowed the parties to introduce evidence and witness testimony. Though Caldwell's attorneys objected on the basis of whether such evidence was on the record during the arbitration and whether such testimony was considered by the arbitrator in his ultimate decision, the court allowed counsel for Yates to continue with his witness examination and evidence presentation.

---

[1] Both Mississippi Code Sections 11-15-25(a) and 11-15-135(a) provide that award modifications may be made if "there is an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award." Miss. Code Ann. §§ 11-15-25(a), 11-15-135(a) (Rev. 2004). Yates failed to cite the provisions of the Mississippi Code construction arbitration laws under Section 11-15-101 through 143, though any error here is harmless, as the statutes are identical.

[2] Retainage is money withheld in a construction project pending satisfactory completion of the work.

¶8.     Ultimately, the trial court reviewed fourteen exhibits and the testimony of one witness in making its decision. Based on this evidence, the court issued its order modifying the arbitrator's award on January 10, 2017. Under Mississippi Code Section 11-15-135 and the Federal Arbitration Act, the court determined that the award contained a "facially evident miscalculation which permitted . . . Caldwell to receive double payment." Finding that the arbitrator had duplicated the labor costs for shingle installation in its award–once under the original subcontract and once under the oral agreement to repair the structural damage (referred to as the Repair Agreement)–it amended the award, reducing the total by $104,507.

¶9.     On appeal, Caldwell argues that the trial court erred when it denied the motion to limit proof and allowed Yates to present evidence and witness testimony. Caldwell also contends that the trial court erred in finding that the arbitrator's award contained a facially evident miscalculation. We agree. Based on the analysis below, this Court finds that the arbitrator's award contained no evident miscalculations which would merit modification. Moreover, the circuit court erred by allowing Yates to present witnesses before the court. Therefore, we reverse the decision of the Neshoba County Circuit Court and remand for the court to confirm the arbitration award.

## APPLICABLE LAW

¶10.    This matter involves a contract's choice-of-law provision and the applicability of federal and state statutes, as well as trade-association regulations. Caldwell (a Georgia-based company) and Yates (a Mississippi corporation) entered into a subcontract in Mississippi to be performed in Alabama. It is undisputed that, between the two companies, their

employees, and their distributors, both labor and materials crossed state lines. Unquestionably, these facts affect interstate commerce, creating the need to continue under the mandate of the Federal Arbitration Act. *See* 9 U.S.C.A. §§ 1, 2. Therefore, Yates correctly argues that the Federal Arbitration Act applies to this matter. *See **MS Credit Ctr., Inc. v. Horton***, 926 So. 2d 167, 173 (Miss. 2006) (quoting ***Guinness Harp Corp. v. Jos. Schlitz Brewing Co.***, 613 F. 2d 468 (2d Cir. 1980) (requiring that "[w]hen a commercial transaction involving interstate commerce includes an agreement to arbitrate disputes, *federal law controls the enforcement of the arbitration agreement*." (emphasis added))).

¶11.    However, "[w]here . . . parties have agreed to abide by state arbitration rules, enforcing those rules according to the terms of the agreement is fully consistent with the FAA . . .". ***Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.***, 489 U.S. 468, 469 (1989), 109 S. Ct. 1248, 1250, 103 L. Ed. 2d 488 (United States Supreme Court determined that the parties' contractual agreement to pursue arbitration under their state rules of arbitration was not preempted by the Federal Arbitration Act when those rules did not "undermine the goals and policies of the FAA.") Article XIV of the parties' subcontract, titled "Dispute Resolution," begins as follows:

> This Subcontract shall be deemed entered into in Philadelphia, Mississippi, upon execution by the parties. The laws of the state of Mississippi govern this Subcontract . . . .

Although the FAA applies directly to the matter, the parties knowingly and willingly contracted for the laws of this state to govern any disputes related to their agreement. Furthermore,  neither party objected to the role of Mississippi law in the contract, nor did

6

either insist on adherence to the FAA prior to the arbitration award's disclosure. Because this Court previously has provided that parties may limit contractually the issues which they will arbitrate (*see Doe v. Hallmark Partners, LP*, 227 So. 3d 1052, 1055 (Miss. 2017)), this Court will not hesitate to extend that provision–as the United States Supreme Court has–to allow parties to specify by contract the laws and rules under which that arbitration will be conducted. After all, "[a]rbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Sci., Inc.*, 489 U.S. at 479, 109 S. Ct. at 1250, 103 L. Ed. 2d 488.

¶12. Based on their agreement, the parties' intent to proceed under Mississippi law is clear, and this Court therefore will apply the same. As a result, we continue our analysis under the provisions in Mississippi Code Sections 11-15-101 through 143. Titled "Arbitration of Controversies Arising from Construction Contracts and Related Agreements," this section of Mississippi's Arbitration Act applies "to any agreement for the . . . engineering, construction, erection, repair or alteration of any building, structure, fixture, . . . or any part thereof . . . ". Miss. Code Ann. § 11-15-101 (Rev. 2004). Because the underlying dispute concerns the installation of a roof and a subcontract between two contractors, the laws under this section control the discussion below.

> **I.** **Whether the trial court erred in finding that the arbitrator's award contained an "evident miscalculation" of figures, justifying the award's modification.**

¶13. A defining characteristic of arbitration is its finality and the binding disposition of a controversy. *See Schaefer v. Allstate Ins. Co.,* 63 Ohio St. 3d 708, 590 N.E. 2d 1242 (1992).

7

Parties to an arbitration enter the process knowing that the arbitrator's award will signal the factual end of their dispute, rather than leaving open the door to the possibility of future appeals. With this in mind, courts asked to review, confirm, or modify an arbitrator's award do so through an extremely limited lens. *See* ***Wilson v. Greyhound Bus Lines, Inc.***, 830 So. 2d 1151, 1155 (Miss. 2002). In this regard, "[t]he scope of judicial review of an arbitration award is quite narrow, and 'every reasonable presumption will be indulged in favor of the validity of arbitration proceedings.'" ***Id.*** (quoting ***Craig v. Barber***, 524 So. 2d 974, 977 (Miss. 1988)) (*see also* ***Hutto v. Jordan***, 36 So. 2d 809, 811 (Miss. 1948)). Specifically, judicial review of an arbitrator's award is limited to Sections 10 and 11 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and Sections 11-15-23, -25, -133 and -135 of the Mississippi Code. *See* ***Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas***, 915 F. 2d 1017, 1020 (5th Cir. 1990). Accordingly, a circuit court has no authority to modify a construction-related arbitration award unless the exceptions outlined under Mississippi Code Section 11-15-135(1)(a) and (2), or its nearly identical, sister provision, found in United States Code Chapter 9, Section 11(a), are met. *See generally* ***Margerum v. Bud's Mobile Homes, Inc.***, 823 So. 2d 1167, 1173 (Miss. 2002) (noting that "[t]he trial court is not allowed to substitute its own judgment on the merits of the controversy for that of the arbitrator but is instead constrained to determine whether the award fails analysis under § 11–15–23."). The applicable provision under Mississippi's construction arbitration statutes provides

> (1) Upon application made by a party to the arbitration within ninety (90) days after receipt of a copy of the award, the court shall modify or correct the award where:

8

> (a) There is an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;
>
> . . .
>
> (2) If such application is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected; otherwise, the court shall confirm the award as made.

Miss. Code Ann. § 11-15-135 (Rev. 2004).

¶14. "A district court enforcing an arbitration award does not engage in a de novo review of the award"; rather, "it may reverse or modify the award only on specified grounds." *Parsons & Whittemore Alabama Mach. and Servs. Corp. v. Yeargin Constr. Co., Inc.*, 744 F. 2d 1482, 1484 (Ala. Ct. App. 1984). This Court embraces an identical standard, requiring that trial courts narrowly focus their judicial review of arbitration awards on those extremely limited exceptions outlined by statute. Those courts limit their analysis of motions to vacate, modify, or correct an arbitration award and do not use such review as an opportunity to relitigate issues decided in the arbitration. *See* *City of Hattiesburg v. Precision Constr., LLC*, 192 So. 3d 1089, 1096 (Miss. Ct. App. 2016). Rather, courts indulge "'every reasonable presumption . . . in favor of the validity of arbitration proceedings.'" *Wilson*, 830 So. 2d at 1155 (quoting *Craig*, 524 So. 2d at 977).

¶15. To that end, "[t]he standard by which an appellate court reviews a trial court's order confirming an arbitration award under the Federal Arbitration Act is that questions of law are reviewed de novo and findings of fact are reviewed only for clear error." *Turquoise Props. Gulf, Inc. v. Overmyer*, 81 So. 3d 1250, 1253–54 (Ala. 2011) (citing *Riccard v. Prudential Ins. Co.*, 307 F. 3d 1277, 1289 (11th Cir. 2002)). Although this standard applies

9

to review of awards under the FAA, this State's arbitration act–specifically the statutes in question–present nearly identical requirements and exceptions for this Court's review. We embrace this standard of review to evaluate properly the application of the statutes in question, while reviewing the trial court's actions for error.

> A. *What amounts to an evident miscalculation in an arbitration award?*

¶16. The trial court determined that the arbitrator's award contained a "facially evident miscalculation," meriting a reduction of $104,507. As indicated *supra*, the Court has yet to determine what amounts to an *evident* miscalculation justifying modification under the law. Like the trial court, some courts have suggested that the error not only must be evident, but that it must be *facially evident* from the text of the award. *See generally **Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.***, 142 F. 3d 188, 194 (4th Cir. 1998); ***Grain v. Trinity Health, Mercy Health Servs. Inc.***, 551 F. 3d 374, 379 (6th Cir. 2008). Some have argued that the miscalculation must reflect a mathematical or computational error in the award. *See generally **Grain***, 551 F. 3d at 378; ***Apex Plumbing Supply, Inc***. 142 F. 3d at 194. *See also **Stroh Container Co. v. Delphi Indus., Inc.***, 783 F. 2d 743, 749 (8th Cir. 1986) (finding that a miscalculation under 9 U.S.C. § 11(a) is evident "when a simple formal, descriptive, or mathematical mistake was made"). The Fifth Circuit has gone so far as to determine that an "'evident material [mis]calculation' occurs 'where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award.'" ***Prestige Ford v. Ford Dealer Computer Servs., Inc.***, 324 F. 3d 391, 396 (5th Cir. 2003) (quoting ***Valentine***

10

***Sugars, Inc. v. Donau Corp.***, 981 F. 2d 210, 214 (5th Cir. 1993)), *overruled on other grounds*.

¶17. Recently, the Mississippi Court of Appeals united these standards in ***City of Hattiesburg v. Precision Constr., LLC.***, 192 So. 3d 1089 (Miss. Ct. App. 2016). Similar to the matter at hand, the ***City of Hattiesburg*** court was asked to review the circuit court's decision to deny the City's request to modify the arbitrator's award based on an allegedly evident miscalculation under Mississippi Code Section 11-15-135. ***Id.*** at 1090-91. With no record to review and only a transcript of the arbitrator's decision to supplement the written award, the court considered the parties' arguments, deferring to the arbitrator's decision and indulging every presumption in favor of its validity. ***Id.*** at 1093.

¶18. In this unanimous opinion, the court began by evaluating the various positions on the meaning of "evident miscalculation."[3] It determined that neither "a mistake of fact or misinterpretation of law by an arbitrator" could amount to an evident miscalculation; rather, such a finding must include "a 'mathematical error' apparent 'on the face of the award.'" ***Id.*** at 1094. Further, the court adopted the Fifth Circuit's interpretation, *supra*, finding an evident material miscalculation when "the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award." ***Id.*** Combining these tests, the court determined that the City had failed to establish the statutory requirement for modification. ***Id.***

---

[3] Wilson, J., writing; Lee, C.J., Irving and Griffis, P.JJ., Barnes, Ishee, Carlton and Greenlee , JJ., concurring; Fair and James, JJ., not participating.

11

¶19.    Assessing this standard, we note first that the Court recognizes arbitration as a binding, bargained-for, dispute-resolution method, and that those matters arbitrated should not be retried by the courts of this state. *See* **City of Hattiesburg**, 192 So. 3d at 1096 (holding that "judicial review of arbitration award is narrowly limited, and a motion to vacate, modify, or correct an arbitration award is not an opportunity to relitigate issues decided in the arbitration."). *See also* **Johnson Land Co. v. C.E. Frazier Constr. Co., Inc**., 925 So. 2d 80, 86 (Miss. 2006) (holding that "arbitration is a substitute for, rather than a mere prelude to, litigation."). Accordingly, arbitration awards are considered final, with very few, narrow exceptions outlined by statute. *See generally* **Craig**, 524 So. 2d at 977.

¶20.    Concerning the narrow exception at issue, the Court finds that the "evident" (plain, obvious, or clearly understood) miscalculation must be apparent from nothing more than the four corners of the award and the contents of the arbitration record. *See* **Apex Plumbing Supply, Inc.**, 142 F. 3d at 194 (holding that "even if the claimed miscalculation . . . constituted a 'material mistake,' the miscalculation was not 'evident' because it did not appear on the face of the arbitration award."). *See also* **Overmyer**, 81 So. 3d at 1257 (recognizing an evident material miscalculation of figures was "apparent on the face of the award"). Looking to evidence beyond "the face" of the award or the arbitration record allows the parties an opportunity to retry the matter in front of a trial judge. Not only does this diminish the binding nature and finality of arbitration proceedings, but by seeking a new judgment from a trial court after resolving the matter through arbitration, the parties implicitly are deprived of their right to a jury trial if desired. *See* **Riverboat Corp. of**

12

*Mississippi v. Harrison Cty. Bd. of Supervisors,* 198 So. 3d 289 (Miss. 2016); *Edmonds v. State*, 234 So. 3d 286 (Miss. 2017) (confirming that the right to a jury trial exists in civil matters). We fail to find any law supporting the notion that our courts should grant parties an opportunity to present new evidence or witness testimony–even in the absence of an arbitration record–and we decline to create such law now. Rather, we find that "[t]he miscalculation, to be evident, must appear on the face of the award or be so readily apparent from the documentation in the case that explanation by proofs is not necessary." *Severtson v. Williams Constr. Co.*, 220 Cal. Rptr. 400, 405 (Cal. App. 2 Dist. 1985). By limiting the trial court's review to the arbitration award and the arbitration record alone, we ensure the integrity of arbitration proceedings will endure, preserving parties' right to review under the statute.

¶21.    Secondly, we distinguish the Court of Appeals' application of the Fifth Circuit standard in the *City of Hattiesburg* from the matter at hand. "The Fifth Circuit has held that 'an evident material miscalculation occurs where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award.'" *City of Hattiesburg*, 192 So. 3d at 1094 (quoting *U-Save Auto Rental of Am., Inc. v. Barton*, No. 3:15–CV–348–DPJ–FKB, 2016 WL 595545, at *5 (S.D. Miss. Feb. 12, 2016)). However, because our statutes require that a miscalculation only be *evident*, and not also *material*, the federal standard does not apply. Because the federal statute differs in this one, critical aspect, we decline to adopt the "unambiguous and undisputed mistake of fact" test. *See Barton*,

13

2016 WL 595545, at \*5. Instead, we apply the Court of Appeals approach to modifying arbitration agreements under the applicable Mississippi statutes and seek only to answer whether the arbitrator made a computational or mathematical error, apparent on the face of the award.

### B. Was a miscalculation evident under this standard?

¶22. In *City of Hattiesburg*, the Court of Appeals noted that the City's arguments regarding the alleged miscalculation failed on two accounts. First, it found that "[t]he concept of an 'evident miscalculation' presupposes that the parties presented the arbitrator with evidence from which a 'correct' calculation could have been made." *City of Hattiesburg*, 192 So. 3d at 1095. If the arbitrator's "calculations were consistent with the evidence and argument presented, then there [was] no miscalculation." *Id.* However, with no record of the arbitration, the court was limited in its ability to investigate the City's claim on the evident miscalculation. Recognizing the limitation, it moved its analysis to look to factual arguments made by the City to support its motion. *Id.* There, it found that the City's arguments failed because, as a rule, our appellate courts do not "inquire into the evidentiary basis of the award." *Id.*

¶23. Because "[t]he City's argument relie[d] on a series of alleged facts, assumptions, prices, and calculations that [were] not 'evident' from the arbitrator's decision or anything else in the record," the court held that "the City [could not] identify any evident miscalculation of figures or any other basis for vacating or modifying the arbitrator's award." *City of Hattiesburg*, 192 So. 3d at 1096. Caldwell's appeal tasks this Court with the same

14

question: Can Yates identify evidence from which a different, but correct, calculation could be made and if not, can it identify an evident miscalculation of figures? Without looking outside the undisputed facts or relying upon testimony from a witness in the trial court, we find that Yates is unable successfully to identify either.

¶24. We note that the extremely limited judicial scope of arbitration awards permits little room for the Court's analytical autonomy in this matter. *See Wilson*, 830 So. 2d at 1155. According to precedent set by the Court of Appeals and the Fifth Circuit, this Court may review (1) the arbitrator's award, (2) the written arguments by the attorneys in their motions to the trial court and in their briefs on appeal, (3) the oral arguments presented to the judge regarding the motion to limit proof, and (4) all documents agreed by the parties to be part of the record before the arbitrator. What the Court may not consider is the witness testimony garnered during the trial court's hearing: such consideration allowed the trial court to enter into a fact-finding position, not appropriate under such circumstances. Our statutes concerning the modification and vacation of awards by "an arbitral tribunal are precisely and narrowly drawn to prohibit such complete de novo review of the substance of the award, as distinguished from gross calculation errors or inadequacies in the makeup of the tribunal itself." *Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F. 2d 541, 543 (5th Cir. 1987). Consequently, "[t]he only basis . . . for reversal of an arbitrator's decision is a violation of the appropriate statute." *Robinson v. Henne*, 115 So. 3d 797, 800 (Miss. 2013). Such limited review has engendered this Court's history of deference to arbitrators, fostering "'the general rule [that arbitrators] are the final judges of both law and fact, and an award will not be

15

reviewed or set aside for mistake in either.'" ***Hutto v. Jordan***, 204 Miss. 30, 36 So. 2d 809 (1948).

¶25.   Importantly, relevant Mississippi law supports the trial court's review of the arbitrator's award when determining whether an evident miscalculation exists.  This same law provides for the presentation of party arguments through motions and court hearings. While written arguments and those orally presented during a hearing may not have been identical to the arguments before the arbitrator, precedent indicates that attorney-delivered arguments are permissible during the confirmation process of an arbitrator's award.  *See generally **City of Hattiesburg,*** 192 So. 3d 1089 (reviewing the circuit court's decision to confirm an arbitration award without a transcript or a record, after conducting an evidentiary hearing on the parties' arguments).  Likewise, when the arbitration record is not made available to the court, and the parties agree that the documentary and tangible evidence proffered was a part of the record before the arbitrator, a trial court may, at its discretion, accept that evidence for review.  *See **Wilson***, 830 So. 2d at 1156–57 ("The trial court did not abuse its discretion by" limiting its review to documents included as part of the original arbitration record.)  However, the court shall use the record evidence only in its efforts to "confirm the award, not review its substance."  ***Johnson Land Co. v. C.E. Frazier Constr. Co., Inc***., 925 So. 2d 80, 86 (Miss. 2006).

¶26.   Following guidelines established by the Court of Appeals and various other courts across the country, we begin our narrow analysis by looking to the thirteen-page award for any facially evident miscalculations or computational errors.  In doing so, we find that no

such errors are present. Looking next to the attorney-written arguments, oral arguments, and agreed-upon record evidence, we likewise fail to find such errors.

¶27. In addressing the alleged errors, we specifically highlight Yates's claim regarding the arbitrator's approach to the retainage amounts. Yates argues that the arbitrator erroneously dismissed the retainage claim without prejudice, asserting that the arbitration award and disposition can either be final or not final, but that it cannot be both. The company alleges that Caldwell's ability to submit the retainage portion of its award to another arbitration single-handedly warrants modification of the award, either vacating the claim entirely or entering the award, with prejudice. We disagree and find that this claim does not amount to an evident miscalculation. Rather, we find that the arbitrator clearly defined the retainage amounts and subtracted them from the overall award as monies "unpaid yet remaining under dispute." Contrary to the explanation provided by Yates, the retainage amounts were not included as recoverable in the award and then left open for determination at a later date. Instead, such amounts were completely removed from the award as not ripe for review.

¶28. While we have yet to address whether arbitration awards may be partial, final, and binding all at once, the general understanding of retainage and the information provided through the party arguments indicate that the retainage was not yet payable. Consequently, it was not yet clear what amounts the arbitrator should or should not award. Recognizing this limitation, the arbitrator's award contemplates retainage based on the original subcontract and reserves its resolution for when the specific amounts become due. We find no error in this conclusion.

¶29. Reviewing the award, the parties' arguments, and the agreed-upon record, we fail to find that the arbitrator erroneously duplicated costs of labor and relied on such a duplication in making his award. Nor can we ascertain that the arbitrator erred by excluding the retainage totals. As a result, the trial court exceeded its jurisdiction by assuming the role of factfinder and reviewing witness testimony outside the arbitration record to determine where and to what extent a miscalculation existed. Instead, the court should have considered only the parties' initial arguments, along with any agreed-upon-arbitration-record evidence presented to supplement the written award.

C. *Even if the trial court could have detected a miscalculation in the award, was it error to allow parties to present witness testimony?*

¶30. Time and again, our appellate courts have held that "it is not appropriate for this Court to inquire into the evidentiary basis of [an arbitrator's] award." *D'Angelo v. Hometown Concepts, Inc.*, 791 So. 2d 270, 273 (Miss. Ct. App. 2001) (affirming the trial court upon finding that any error in the amount of damages the arbitrator awarded was not the product of an evident miscalculation of figures, but a contested issue of fact). To do otherwise would be to open the door to the boundless legal and evidentiary appeals that can "'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,' and bring arbitration theory to grief in post arbitration process." *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008), 128 S. Ct. 1396, 1405, 170 L. Ed. 2d 254 (holding U.S.C. §§ 9, 9-11 as the substance of a national policy favoring arbitration and its limited review, maintaining the essential quality of arbitration as its ability to

18

immediately resolve disputes).  "In the years before the passage of the FAA, arbitration awards were subject to thorough and broad judicial review . . . . In §§ 10 and 11 of the FAA, Congress significantly limited the grounds for judicial vacatur or modification of such awards in order to protect arbitration awards from hostile and meddlesome courts." ***Hall Street Assocs.***, 552 U.S. at 595. Much like Sections 10 and 11 of the FAA, the Mississippi construction arbitration statutes significantly limit the grounds for vacation and modification under Mississippi Code Sections 11-15-133 and 11-15-135 respectively.  Courts adhering to these rules have no need to hear witness testimony to determine whether an award should be modified or withdrawn; rather, courts make these decisions based on the evident nature–the clear and obvious presence–of the error in the award.

¶31.    The *evident* nature of an award's calculation error along with the arguments and record evidence presented by the parties would have been enough for the trial court to make its decision.  While the trial judge determined that an evident miscalculation existed in the award prior to hearing the witness testimony, the judge erred by later permitting the testimony and using it to make his ultimate decision on where and to what extent the miscalculation existed. Such an error transformed the trial court's role in the confirmation and modification hearing, expanding the very narrow and limited purpose of its review, and imbuing it with the responsibility of the factfinder.  Because arbitration is meant to supplant litigation, not supplement it, the court abused its discretion by allowing witness testimony during the award-confirmation hearing, resulting in plain error by the court.

¶32. This Court holds that in such a situation, courts requested to confirm, modify and/or vacate arbitration awards are not at liberty to permit the examination of witnesses. Providing otherwise would permit courts to relitigate factual matters already decided. We previously noted that "the confirmation of an award . . . is not a trial. Findings of fact [are] superfluous." *Johnson Land Co.*, 925 So. 2d at 86 (quoting *Thorgaard Plumbing & Heating Co. v. Cty. of King*, 71 Wash. 2d 126, 132 (1967)). "The object [of arbitration] is to avoid what some feel to be the formalities, the delay, the expense and vexation of ordinary litigation." *Id.* Likewise, today we recognize that witness testimony outside the confines of the arbitration record amounts to fact finding by the trial court, exceeding the scope of the court's review. Such "complete de novo review of the substance of the award" is prohibited by our narrowly drawn statutes. *Legion Ins. Co.*, 822 F. 2d at 543. To that end, we find that, even if the judge was warranted in his initial determination that a miscalculation existed, it was error for the court to permit the examination of witnesses to determine the character and extent of the mistake.

**II. Whether Caldwell is entitled to attorney's fees and costs of appeal**.

¶33. Mississippi Code Section 11-15-137 provides that "[u]pon the granting of an order confirming, modifying or correcting an award, a judgment or decree shall be entered and be enforced as any other judgment or decree. Costs may be awarded by the court." Miss. Code Ann. § 11-15-137 (Rev. 2004). Citing this statute, Caldwell asserts that Yates understood the extremely limited standard for arbitration-award review, and because it failed to raise cognizable grounds for the trial court to amend, alter, or vacate the award, this Court should

20

award attorney's fees and costs resulting from Yates's motions in the trial court. Though we find that Caldwell's argument fails on several points under this request, the most relevant is that the parties contracted away their right to request fees and costs.

¶34. In their original subcontract, the parties stipulated that if the two engaged in litigation or arbitration over "a monetary claim[,] each party shall be solely responsible for its respective costs, expenses and attorneys fees. . . ." While the determination of "'reasonable attorneys' fees is a matter ordinarily within the sound discretion of the trial court," (*See Mississippi Power & Light Co. v. Cook*, 832 So. 2d 474, 486 (Miss. 2002) (quoting *Gilchrist Tractor Co. v. Stribling*, 192 So. 2d 409, 418 (Miss. 1966)), this Court has long held that "[a]bsent some statutory authority or contractual provision, attorneys' fees cannot be awarded unless punitive damages are also proper." *Fulton v. Mississippi Farm Bureau Cas. Ins. Co.* 105 So. 3d 284, 287-88 (Miss. 2012) (citations omitted). Neither is available here.

¶35. Moreover, the Mississippi Rules of Appellate Procedure broadly describe the Court's role in awarding fees and costs under Rule 36. The authority under this rule provides the Court with generous discretion in making such an award. Exercising that discretion, the Court recognizes the parties' agreement, holding them responsible for their individual costs and fees and dividing the costs of appeal accordingly.

## CONCLUSION

¶36. Generally, arbitrators have broad discretion in determining the remedy appropriate for the matters before them. With statutorily guided deference, courts of this state limit their judicial review of such proceedings, indulging "every reasonable presumption . . . in favor

21

of the validity of arbitration." ***Hutto v. Jordan***, 36 So. 2d 809, 811 (Miss. 1948). We do not use the statutory exceptions "to inquire into the original merits . . . or to show that in the evidence the award ought to have been different . . . or that the decision, in view of all facts and circumstances, was unjust." ***Id.*** Instead, our courts employ the limited exceptions, all while "resist[ing] the temptation to condemn imperfect proceedings without a sound statutory basis for doing so." ***Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas***, 915 F. 2d 1017, 1022 (5th Cir. 1990).

¶37. Applying this review, we find the award at issue contains no evident miscalculations and is accurate according to the facts demonstrated by the parties to have been before the arbitrator. Because Yates failed to show that any mathematical error appears on the face of the award there is insufficient proof of an evident miscalculation that would compel the Court to modify the award. Therefore, we reverse the circuit court's decision to modify the arbitrator's award, and remand the case to the circuit court with directions to confirm the award as determined by the arbitrator.

¶38. **REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH, P.J., KING, COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ., CONCUR. KITCHENS, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.; COLEMAN, J., JOINS IN PART.**

**KITCHENS, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶39. I agree with the majority's decision that the arbitrator's award in this case did not demonstrate an "evident miscalculation" within the meaning of Mississippi Code Sections 11-15-25(a) and 11-15-135(a), necessitating a modification, and that the Circuit Court of

22

Neshoba County erred by allowing witness testimony during the award confirmation hearing. I write separately solely for the purpose of making an observation.

¶40. Mississippi Code Section 11-15-1 states:

> All persons, except infants and persons of unsound mind, may, by instrument of writing, submit to the decision of one or more arbitrators any controversy which may be existing between them, which might be the subject of an action, and may, in such submission, agree that the court having jurisdiction of the subject matter shall render judgment on the award made pursuant to such submission.

Miss. Code Ann. § 11-15-1 (Rev. 2014). Mississippi Code Section 11-15-21 (Rev. 2014) states:

> Upon presentation of the articles of submission and the award to the court designated in the submission or the court having jurisdiction of the subject matter of the award, the court shall, upon motion, confirm the award, unless the same be vacated or modified, or a decision thereon be postponed, as hereinafter provided.

Miss. Code Ann. § 11-15-21 (Rev. 2014). Mississippi Code Section 11-15-25 allows any party to the arbitration to move to modify or correct the award "[w]here there is an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in such award . . . ." Miss. Code Ann. § 11-15-25(a) (Rev. 2014). Mississippi Code Section 11-15-135 requires the court to modify or correct the arbitral award when "[t]here is an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award . . . ." Miss. Code Ann. § 11-15-135(a) (Rev. 2014).

¶41. As the majority recognizes, this Court has held that:

> We agree with the analysis and ruling of the Supreme Court of Washington, in ***Thorgaard Plumbing & Heating Co. v. County of King***, 71 Wash. 2d 126, 132, 426 P. 2d 828 (1967), that arbitration is a substitute for, rather than a mere prelude to, litigation. The object is to avoid what some feel to be the formalities, the delay, the expense and vexation of ordinary litigation. ***Id.*** "[T]he confirmation of an award . . . is not a trial. Findings of fact would have been superfluous." ***Id.*** at 136, 426 P.2d 828. This reasoning supports the long-standing public policy, set forth in ***Scottish Union & National Ins. Co. v. Skaggs***, 114 Miss. 618, 619, 75 So. 437, 438 (1917), to "permit parties to arbitrate their differences and to give effect to a valid submission and award." ***Id.*** Further, the ***Skaggs*** Court articulated the public policy that the arbitration and award statute "shall be liberally construed for the encouragement of the settlement of disputes and the prevention of litigation." ***Id.***

***Johnson Land Co. v. C.E. Frazier Constr. Co., Inc.***, 925 So. 2d 80, 86 (Miss. 2006).

¶42. The Mississippi Constitution provides that "[t]he circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court, and such appellate jurisdiction as shall be prescribed by law." Miss. Const. art. 6, § 156. The Constitution prescribes that "[t]he powers of the government of the State of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another." Miss. Const. art. 1, § 1. "No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others." Miss. Const. art. 1, § 2.

¶43. This Court has held that it is the province of the judiciary "to draw upon its inherent power to prescribe rules of procedure to facilitate the administration of justice in the courts throughout the state." ***Newell v. State***, 308 So. 2d 71, 78 (Miss. 1975). This Court continued:

> [A]s long as rules of judicial procedure enacted by the legislature coincide with fair and efficient administration of justice, the Court will consider them

24

in a cooperative spirit to further the state's best interest, but when, as here, the decades have evidenced a constitutional impingement, impairing justice, it remains our duty to correct it.

*Id.*

¶44.    Both parties in the present case, seasoned contractors and subcontractors, contracted to forego any potential remedy in the courts of this State by agreeing to arbitrate their claims. Nevertheless, being dissatisfied with the arbitral award, Yates, employing procedures outlined in the controlling statutes, invoked the services of this State's court system to amend that award.

¶45.    Here, but for the parties' having made a valid agreement to arbitrate, the Circuit Court of Neshoba County would have had original jurisdiction of the dispute. The arbitration statutes establish rules of procedure for resolving disputes outside this State's court system. But the statutes go further than that by mandating that the circuit court confirm the award, while at the same time limiting the court's review of the award. Thus far, this Court has forgone its constitutional prerogative by acquiescing in such legislative limitation of its authority over matters of judicial procedure; and the statutes do appear, in the present case, to "coincide with fair and efficient administration of justice" not resulting in a "constitutional impingement, impairing justice."

    **KING, J., JOINS THIS OPINION.  COLEMAN, J., JOINS THIS OPINION IN PART.**

25